IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

CLERKS OFFICE US DISTRICT COURT
AT HARRISONBURG, VA
FILED

09/04/2025

LAURA A. AUSTIN, CLERK
BY: /s/ Amy Fansler
DEPUTY CLERK

| | | |
|---|---|---|
| Brian K. Legge, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 5:25-cv-00062 |
| | ) | |
| Clarke County Zoning Department *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Plaintiff Brian K. Legge filed this action after officials in Clarke County, Virginia, found that a detached garage on Legge's property violated the County's zoning ordinance and successfully obtained relief against Legge in state court. This matter is before the court on Legge's motion for a preliminary injunction (Dkt. 16). Legge asks the court to enjoin Defendants from proceeding with a demolition of the garage while this action is pending. For the reasons that follow, the court will deny Legge's motion.

### I.    Background[1]

In November 2019, Legge obtained zoning and building permits from Clarke County to construct a detached garage at his residential property located at 140 White Post Road. (Dkt. 3-2 at 29–32; Dkt. 20-2 at 11.) The property is located within Clarke County's Rural Residential (RR) Zoning District and Historic (H) Overlay District. (Dkt. 20-2 at 2.) Section

---

[1] This section contains findings of fact the court has relied on to resolve Legge's motion for a preliminary injunction. The findings of fact are derived from Legge's amended complaint, the exhibits he attached to his amended complaint and motion for a preliminary injunction, and the exhibits Defendants attached to their responsive brief opposing the motion. The Analysis section contains the conclusions of law relevant to the court's decision.

3-A-3-c of the Clarke County Zoning Ordinance requires that a structure be set back at least 50 feet from the edge of the right-of-way for a primary highway with at least 5,000 vehicle trips per day.  (*See id.* at 11–12.)  Legge's property adjoins Route 340 (Lord Fairfax Highway), which has more than 5,000 daily vehicle trips.  (*See id.* at 11.)  Legge's application for a zoning permit and associated construction plan showed the garage would be built no less than 50 feet from the edge of the right-of-way for Route 340.  (Dkt. 3-2 at 30.)

Because Legge's property is within the H District, he had to obtain a Certificate of Appropriateness from the Historic Preservation Commission ("HPC") before beginning construction.  (*See* Dkt. 20-2 at 14.)  The HPC issued a Certificate of Appropriateness for the garage in October 2019.  (Dkt. 3-2 at 42–49.)  On April 9, 2020, the Clarke County Zoning Administrator, Ryan Fincham, sent Legge a Notice of Violation based on the HPC's finding that the garage may violate certain terms of the Certificate of Appropriateness.  (Dkt. 3-1 at 10–11.)  The Notice of Violation advised Legge that he had the right to appeal the administrative determination to Clarke County's Board of Zoning Appeals ("BZA"); Legge did not file an appeal.  (*See* Dkt. 3-1 at 5–6; Dkt. 3-2 at 11.)

The April 9, 2020 Notice of Violation also informed Legge that the HPC had identified a potential violation of the 50-foot minimum setback requirement.  (Dkt. 3-1 at 10–11.)  It noted that the County may require an "as-built survey" to evaluate the garage's compliance with the setback requirement.  (*Id.* at 11.)  An as-built survey was conducted in August 2020. (*Id.* at 12.)  It showed that the garage sits only 35 to 38 feet from the edge of the right-of-way for Route 340, which encroaches on the minimum setback.  (*See id.*)

On August 31, 2020, the Zoning Administrator issued another Notice of Violation based on a determination that Legge's garage violated the 50-foot minimum setback requirement. (*Id.* at 13.) Legge appealed the Zoning Administrator's determination to the BZA. (*See* Dkt. 20-1 at 1–6.) On January 25, 2021, the BZA upheld the Zoning Administrator's determination after hearing argument from counsel for Legge and the County. (*Id.*) Legge did not appeal the BZA's decision to state court. (*See* Dkt. 3-1 at 6–7; Dkt. 3-2 at 12.)

After the BZA denied his appeal, Legge submitted a request for a variance to allow the garage to remain in its current location. (*See* Dkt. 3-1 at 449–64.) The BZA denied the request for a variance following a hearing on April 19, 2021. (*Id.* at 7; Dkt. 3-2 at 12.) Legge did not appeal that decision to state court. (*Id.*)

On May 28, 2021, the County gave Legge a 30-day extension to resolve the setback violation. (Dkt. 3-1 at 14–15.) Legge did not correct the issue within that period. On August 5, 2021, the County filed a complaint against Legge in the Circuit Court for Clarke County.[2] (*See id.* at 4–9.) The County asked the court to enter a mandatory injunction requiring Legge to remove the garage or take steps to bring it into compliance with the setback requirement. (*Id.* at 7–8.) Legge filed a demurrer, plea in bar, answer, and counterclaim. (Dkt. 3-2 at 4–18.) His counterclaim sought a declaratory judgment that his right to use the garage at its current location had vested under Virginia law, even if it did not comply with the County's zoning ordinance. (*Id.* at 18.)

---

[2] The County also named Legge's then-partner Tara Crosen as a defendant in the state-court action. (*See* Dkt. 3-1 at 4.) Crosen is not a party to this action.

The state circuit court held a trial on April 20, 2022. (*See* Dkt. 20-4.)  The court found in favor of the County and denied Legge's counterclaim. (*Id.* at 76–81.)  The court entered a final judgment on June 1, 2022, that ordered Legge to "get into compliance with the Zoning Ordinance setback requirement and any other provisions of the Zoning Ordinance by January 13, 2023." (Dkt. 3-1 at 551–53.)  Legge did not appeal that judgment.

Legge did not address the setback issue by the January 13, 2023 deadline.  On February 23, 2023, the County petitioned the court to order Legge to show cause why he should not be held in contempt and fined for failing to comply with the June 1, 2022 order. (*Id.* at 561–63.)  The court issued an order to show cause. (*Id.* at 570–71.)  On April 17, 2023, it entered an agreed order that found Legge in contempt and ordered him to pay a $500 per-day fine if he did not take certain steps to bring the garage into compliance with the zoning ordinance by designated deadlines. (*Id.* at 574–77.)  Legge did not meet those deadlines.  Following status hearings in November 2023 and January 2024, the state court entered an order on February 5, 2024, that required Legge to pay a $500 daily fine beginning on January 18, 2024, and continuing until he submitted a demolition plan. (*Id.* at 580, 582–86.)

On June 12, 2024, the County filed a second motion to require Legge to show cause, arguing that he had failed to pay the fines in violation of the court's February 5, 2024 order. (*Id.* at 587–91.)  The court issued an order to show cause on June 17, 2024. (*Id.* at 592–93.)  On July 29, 2024, the court entered an order holding Legge in contempt. (*Id.* at 600–01.)  It entered judgment for the County against Legge for $91,000 in unpaid fines from January 18, 2024, through July 17, 2024. (*Id.*)

Legge did not pay that judgment or take any steps to bring the garage into compliance with the zoning ordinance. The County moved to reopen the state case and filed another motion to require Legge to show cause. (Dkt. 20-5.) The court entered another show-cause order on April 2, 2025. (Dkt. 3-1 at 603.) Following a May 7, 2025 hearing, the court once again held Legge in contempt and ordered him to pay an additional $146,500 in unpaid fines from July 18, 2024, through May 7, 2025. (*Id.* at 603–06.) The court also ordered Legge to demolish the offending portion of the garage by June 20, 2025, and authorized the County to follow prescribed steps for demolishing the structure if Legge failed to do so. (*Id.* at 604–05.)

Legge filed a motion in state court to stay the demolition deadline. (Dkt. 20-6.) The court held a hearing on July 16, 2025, and denied the motion. (*See* Dkt. 20-7; Dkt. 20-8.) The demolition is scheduled to begin on October 1, 2025. (Dkt. 27.)

On June 18, 2025, Legge filed a complaint for declaratory and injunctive relief in the United States District Court for the Western District of Virginia. (Compl. (Dkt. 1).) He filed an amended complaint on July 9, 2025. (Am. Compl. (Dkt. 3).) The amended complaint names as defendants the Clarke County Zoning Department, the Clarke County Board of Supervisors, the Historical District of White Post, Virginia, and several County officials sued in their official capacities. (*Id.* ¶¶ 7–15.) It alleges five different causes of action. Count I alleges a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment. (*Id.* ¶¶ 137–53.) Count II alleges a violation of the Fair Housing Act, 42 U.S.C. §§ 3601 *et seq.* (*Id.* ¶¶ 154–75.) Count III alleges violations of the Eighth Amendment's Excessive Fines Clause and a Virginia statute governing fines for zoning violations. (*Id.* ¶¶ 176–88.) Counts IV and V allege § 1983 claims for violations of procedural

and substantive due process, respectively.  (*Id.* ¶¶ 189–209.)  Legge seeks declaratory and injunctive relief, $1,450,000 in compensatory damages, and $1,125,000 in punitive damages.[3] (*Id.* at 33–34.)

Legge filed a motion for a preliminary injunction on July 30, 2025.  (Mot. for Prelim. Inj. (Dkt. 16).)  Defendants filed an opposition brief and exhibits, (Defs.' Opp'n (Dkt. 20)), and Legge filed a reply, (Pl.'s Reply (Dkt. 24)).  The court heard argument on the motion on August 13, 2025.  (Dkt. 26.)

## II.    Standard of Review

Federal Rule of Civil Procedure 65(a) authorizes courts to issue preliminary injunctions. "A preliminary injunction is an extraordinary remedy intended to protect the status quo and prevent irreparable harm during the pendency of a lawsuit."  *Di Biase v. SPX Corp.*, 872 F.3d 224, 230 (4th Cir. 2017).  The court may grant a preliminary injunction only "upon a clear showing that the plaintiff is entitled to such relief."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).  A preliminary injunction is "never awarded as of right."  *Id.* at 24.  To obtain one, the plaintiff must demonstrate (1) that he is likely to succeed on the merits; (2) that he is likely to suffer irreparable harm without preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest.  *Id.* at 20.

## III.    Analysis

To satisfy the first *Winter* factor, "[a] plaintiff need not establish a certainty of success, but must make a clear showing that he is likely to succeed at trial."  *Di Biase*, 872 F.3d at 230

---

[3] Count VI of the amended complaint requests permanent injunctive relief against demolition but does not allege a separate cause of action.  (*Id.* ¶¶ 210–20.)

(internal quotation marks omitted).  Defendants argue that Legge cannot meet that standard

here because his claims are barred by either the *Rooker-Feldman* doctrine or by *res judicata*.

(Defs.' Opp'n at 8–14.)  They alternatively argue that each of Legge's individual claims fails on

the merits.  (*Id.* at 15–28.)

## A. *Rooker-Feldman* Doctrine

Defendants first argue that the *Rooker-Feldman* doctrine prevents the court from

exercising subject matter jurisdiction over any of Legge's claims.  (*Id.* at 8–11.)  The *Rooker-

Feldman* doctrine derives from the Supreme Court's decisions in *Rooker v. Fidelity Trust Co.*, 263

U.S. 413 (1923), and *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983).  It prohibits federal

district courts from hearing "cases brought by state-court losers complaining of injuries caused

by state-court judgments rendered before the district court proceedings commenced and

inviting district court review and rejection of those judgments." *T.M. v. Univ. of Md. Med. Sys.

Corp.*, 139 F.4th 344, 349 (4th Cir. 2025) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*,

544 U.S. 280, 284 (2005)).  Such claims are barred because they ask a federal district court "to

conduct an appellate review of the state-court decision," and no federal statute authorizes a

federal district court to exercise such jurisdiction.  *Adkins v. Rumsfeld*, 464 F.3d 456, 464 (4th

Cir. 2006) (quoting *Davani v. Va. Dep't of Transp.*, 434 F.3d 712, 719 (4th Cir. 2006)); *see T.M.*,

139 F.4th at 348.

The *Rooker-Feldman* doctrine prevents federal district courts from reviewing judgments

of state courts of all levels.  *See Jordahl v. Democratic Party of Va.*, 122 F.3d 192, 199 (4th Cir.

1997).  It "extends not only to issues actually decided by a state court but also to those that

are inextricably intertwined with questions ruled upon by a state court."  *Safety-Kleen, Inc.*

(Pinewood) v. Wyche, 274 F.3d 846, 857–58 (4th Cir. 2001) (internal quotation marks omitted). "A federal claim is 'inextricably intertwined' with a state court decision if success on the federal claim depends upon a determination that the state court wrongly decided the issues before it." *Id.* at 858 (internal quotation marks omitted).  At the same time, *Rooker-Feldman* is not a general preclusion doctrine and does not "stop a district court from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court." *Exxon*, 544 U.S. at 293.

Most of Legge's claims in this case are not precluded by the *Rooker-Feldman* doctrine. His claims largely allege that Defendants violated various federal laws when they issued the Notices of Violation and denied his BZA appeal and request for a variance.  The state-court action involved claims relating to the same zoning enforcement action, but Legge did not raise the claims he now raises in his federal lawsuit, so the state court's June 1, 2022 judgment did not address them.  Thus, most of his claims before this court do not "depend[] upon a determination that the state court wrongly decided the issues before it," *Safety-Kleen*, 274 F.3d at 857–58, and this court can hear them without having to review (and potentially reject) the state court's judgment.

While the *Rooker-Feldman* doctrine does not prevent the court from exercising jurisdiction over most of Legge's claims, it does bar Count III, which alleges that Legge was subject to fines that violated the Eighth Amendment and Virginia law.  The amended complaint provides very little detail on the fines he claims were unlawfully excessive.  It alleges only that Defendants "sought to impose punitive and accumulating civil fines totaling over $20,000 on [Legge] based on [the] alleged setback violation."  (Am. Compl. ¶ 178.)  The

amended complaint does not include any information about the specific timing of those alleged fines. (*See id.* ¶¶ 51, 178, 181, 213.)  At the hearing on the preliminary injunction motion, Legge's counsel clarified that Legge was not subject to any fines before the state court entered judgment imposing the first $91,000 in penalties.  Because Legge's counsel has confirmed that the claims in Count III attempt to challenge the state court's judgment imposing the fines, those claims run afoul of *Rooker-Feldman.*  They complain of an injury caused by an earlier state-court judgment and ask this court to review and reject that judgment. *See Exxon*, 544 U.S. at 284.  This court lacks the authority to do that.

## B.  *Res Judicata*

Defendants next argue that Legge's remaining claims are barred by *res judicata.*  (Defs.' Opp'n at 11–14.)  Federal courts must give full faith and credit to valid state-court judgments. *In re Genesys Data Techs., Inc.*, 204 F.3d 124, 127 (4th Cir. 2000) (citing 28 U.S.C. § 1738).  When considering the preclusive effect of an earlier state-court judgment, a federal court must "apply the preclusion law of the State in which the judgment was rendered."  *Bennett v. Garner*, 913 F.3d 436, 440 (4th Cir. 2019) (internal quotation marks omitted).  Federal courts follow a two-step process to determine the effect of a prior state-court judgment.  First, the court must determine the preclusive effect of the judgment under the applicable state law.  *Genesys*, 204 F.3d at 128.  "If state law would not bar relitigation of an issue or claim decided in the earlier proceeding, then the inquiry ends—a federal court will not give the state court judgment preclusive effect either."  *Id.*  If the state law *would* give the judgment preclusive effect, the court must move to the second step, which asks whether Congress has created an exception

to 28 U.S.C. § 1738 that would justify "refus[ing] to give a judgment the preclusive effect to which it is entitled under state law." *Id.*

Here, a Virginia state court entered the prior judgment, so this court begins by applying Virginia principles of *res judicata*—specifically, claim preclusion.[4]  Under Virginia law, claim preclusion is governed by Rule 1:6 of the Rules of the Supreme Court of Virginia.  In relevant part, Rule 1:6 states:

> A party whose claim for relief arising from identified conduct, a transaction, or an occurrence, is decided on the merits by a final judgment, is forever barred from prosecuting any second or subsequent civil action against the same opposing party or parties on any claim or cause of action that arises from that same conduct, transaction or occurrence, whether or not the legal theory or rights asserted in the second or subsequent action were raised in the prior lawsuit, and regardless of the legal elements or the evidence upon which any claims in the prior proceeding depended, or the particular remedies sought.  A claim for relief pursuant to this rule includes those set forth in a complaint, counterclaim, cross-claim or third-party pleading.

Va. Sup. Ct. R. 1:6(a).

Under Rule 1:6(a), "the elements of claim preclusion are: (1) a final judgment on the merits, (2) the same parties (or their privies) in both proceedings, also expressed as identity of the parties, and (3) both causes of action arising out of the same conduct, transaction, or occurrence."  *Lane v. Bayview Loan Servicing, LLC*, 831 S.E.2d 709, 714 (Va. 2019) (citing Va. Sup. Ct. R. 1:6(a)).  A party may not relitigate "the same cause of action or any part thereof which *could* have been litigated in the previous action."  *Bennett*, 913 F.3d at 440 (quoting *D'Ambrosio v. Wolf*, 809 S.E.2d 625, 628 (Va. 2018)).  In other words, claim preclusion "operates to prevent a party from getting a 'second bite at the apple' with respect to wrongs

---

[4] Virginia's *res judicata* doctrine encompasses both claim preclusion and issue preclusion.  *See D'Ambrosio v. Wolf*, 809 S.E.2d 625, 628 (Va. 2018).  Defendants argue that claim preclusion applies in this case.

arising from a single dispute." *Id.* It does not prohibit a party from litigating a claim they could not have raised in the earlier action, such as a claim that did not accrue prior to that action. *See D'Ambrosio*, 809 S.E.2d at 628; *Funny Guy, LLC v. Lecego, LLC*, 795 S.E.2d 887, 900 (Va. 2017).

Legge does not contest that most of the elements for claim preclusion are met here. He appears to concede that the state circuit court rendered a final judgment on the merits and that there is an identity of parties or privies between the state action and this one. (*See* Defs.' Opp'n at 14; Pl.'s Reply at 3–4.) At the hearing, Legge's counsel also conceded that his claims in this case arise from the same transaction or occurrence as the state litigation—namely, the County's zoning enforcement measures against his garage. But Legge argues that his federal claims are not subject to claim preclusion because they "were neither adjudicated nor appropriate for adjudication in Virginia Circuit Court." (Pl.'s Reply at 3.) He emphasizes that his federal claims "seek remedies beyond the scope of state zoning appeals."[5] (*Id.* at 3–4.)

The Virginia circuit court certainly was an appropriate forum for adjudicating federal claims arising from the zoning dispute. The litigation before the circuit court was not, as Legge suggests, a "state zoning appeal." Legge did not appeal the BZA decisions denying his administrative appeal and variance request. (*See* Dkt. 3-1 at 6–7; Dkt. 3-2 at 12.) Instead, the County brought the state-court action to obtain a mandatory injunction requiring Legge to comply with the setback requirement. (*See* Dkt. 3-1 at 4–8.) Legge could have alleged federal claims arising from the zoning dispute in the counterclaim he filed in that case. *See, e.g.*, Va.

---

[5] Legge also cites the Fourth Circuit's decision in *Hately v. Watts*, 917 F.3d 770 (4th Cir. 2019), to support his argument. (Pl.'s Reply at 3.) *Hately* addressed a question related to issue preclusion and has little to no bearing on this case. *See Hately*, 917 F.3d at 778–81.

Sup. Ct. R. 1:4(k) (stating that a party asserting a counterclaim or defense "may plead alternative facts and theories of recovery against alternative parties, provided that such claims, defenses, or demands for relief so joined arise out of the same transaction or occurrence"). The Virginia circuit court could have adjudicated such claims. "State courts are fully competent to adjudicate constitutional challenges to local land-use decisions" and indeed "have more experience than federal courts do in resolving the complex factual, technical, and legal questions related to zoning and land-use regulations." *San Remo Hotel, L.P. v. City of S.F.*, 545 U.S. 323, 347 (2005).

The only question, then, is whether Legge's federal claims had accrued prior to the state-court litigation. The key events that gave rise to Legge's claims—the Notices of Violation and adverse BZA decisions concerning the garage—all predate that litigation. So do many of the other facts alleged in the amended complaint. On the other hand, a few allegations concern events that occurred while the state litigation was ongoing or after the state court entered judgment on June 1, 2022. Legge asserts that certain County officials, in 2022 and 2023, rejected his requests to reconsider their earlier determinations finding the garage noncompliant and refused to grant him an exception to the zoning requirements. (*See* Am. Compl. ¶¶ 82–84, 118.) It is unclear whether those limited allegations establish that Legge's federal causes of action had not accrued at the time of the state litigation, and neither party cites any Virginia authority that offers guidance on the issue. *See, e.g., TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 499 (2d Cir. 2014) (discussing the "at-times-difficult determination of what degree of conduct following the first judgment is necessary to give rise to a new claim" (internal quotation marks omitted)). While it is possible the prior judgment has a preclusive effect in

this case, the court need not resolve that issue at this stage.  Even if Legge's claims are not precluded, an analysis of those claims shows he is not entitled to preliminary injunctive relief.

### C. Analysis of Individual Claims

Aside from the excessive fines claims in Count III, Legge alleges four causes of action. He claims that Defendants' zoning enforcement actions violated the Equal Protection Clause, the Fair Housing Act, and both his procedural and substantive due process rights.  Legge has not shown a clear likelihood of success on any of those claims.

#### 1. Equal protection (Count I)

Count I of the amended complaint alleges that Defendants selectively enforced the County's zoning ordinances against Legge in violation of the Equal Protection Clause.  (Am. Compl. ¶¶ 138–40.)  Legge's equal protection claim relies on a "class-of-one" theory.  (*Id.* ¶ 141.)  A plaintiff who brings a class-of-one claim must show that he was "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam).

To establish a class-of-one claim in the context of a discretionary zoning decision, the plaintiff must "show an extremely high degree of similarity between themselves and the persons to whom they compare themselves."  *SAS Assocs. 1, LLC v. City Council for City of Chesapeake, Va.*, 91 F.4th 715, 721–22 (4th Cir. 2024) (internal quotation marks omitted).  Only then is it possible to infer that the differential treatment was intentional and arbitrary.  *Id.* When articulating that standard, the Fourth Circuit has emphasized that "zoning decisions are presumptively the province of local governments" and "lie at the core of local governments' historic responsibilities."  *Id.* at 720.

- 13 -

The amended complaint alleges that there are a total of 17 comparator properties in the White Post Historic District that border Route 340 and have structures on them, and that it "appears that more than half of those properties enjoy structures situated within the required setback area of Route 340." (Am. Compl. ¶ 63.) It lists nine properties with addresses on Route 340 or White Post Road that "appear to maintain structures that would generally not meet the [setback] requirement." (*Id.* ¶ 62.) Legge identifies the address of each property and the alleged setback distance of a structure on each property.[6] (*Id.*) His preliminary injunction motion cites three additional properties on White Post Road with alleged setback violations. (Mot. for Prelim. Inj. at 6.) Legge claims the County has not taken enforcement action against any of those properties. (*Id.*; Am. Compl. ¶ 65.)

Based on those allegations alone, Legge is not likely to show "an extremely high degree of similarity" between his property and the comparator properties. *SAS*, 91 F.4th at 722. For one, even if the other properties have the same zoning classifications and maintain structures that encroach on the setback area, Legge has not identified when those structures were built. It is possible they all predate the zoning ordinance that imposes the setback requirement. In the variance request he submitted to the BZA, Legge himself acknowledged that "[s]ome, if not most" of the other allegedly nonconforming structures may predate the setback requirement and therefore be "grandfathered in." (Dkt. 3-1 at 473.) Without any facts showing that the County permitted another property owner to construct a noncompliant

---

[6] Legge measures the alleged setback distance from the centerline of Route 340 instead of from the edge of the right-of-way. (*See* Am. Compl. ¶ 62.) He states that Route 340 has a 55-foot radial right-of-way measured from the centerline of the road. (*See id.* ¶ 36.) So, to comply with the ordinance requiring a 50-foot setback from the edge of the right-of-way, a structure must be located at least 105 feet from the centerline of the road.

structure when the ordinance was in effect, Legge has not demonstrated that Defendants likely treated him differently than a "highly similar" property owner. *SAS*, 91 F.4th at 723.

More fundamentally, Legge is not likely to establish that the other properties were sufficiently similar by focusing on the setback issue alone. The April 9, 2020 Notice of Violation, which he did not appeal, found that the garage's design also appeared to violate several conditions of the Certificate of Appropriateness issued by the HPC. (Dkt. 3-1 at 523–24.) Legge has not demonstrated that the structures on the other properties in the Historic Overlay District similarly failed to comply with Certificates of Appropriateness. Count I focuses exclusively on the setback violation. (*See* Am. Compl. ¶¶ 137–53.)

Because Legge has not identified highly similar properties that received more favorable treatment, he has not clearly shown a likelihood of success on his class-of-one equal protection claim.

### 2. Fair Housing Act (Count II)

Count II alleges that Defendants violated the FHA by discriminating against him based on his disability and retaliating against him for opposing the County's zoning enforcement decisions. (Am. Compl. ¶¶ 154–75.) It first alleges a violation of 42 U.S.C. § 3604(f)(2).[7] (*Id.* ¶ 167.) That subsection makes it unlawful "[t]o discriminate against any person . . . in the provision of services or facilities in connection with [a] dwelling, because of [the person's] handicap." 42 U.S.C. § 3604(f)(2). For purposes of the subsection, "discrimination" includes

---

[7] Legge also briefly alleges that Defendants violated 42 U.S.C. § 3604(b) by engaging in selective enforcement. (Am. Compl. ¶ 168.) Section 3604(b) makes it unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin." Nothing in the record suggests that Legge faced discrimination because of his membership in one of the classes protected by § 3604(b).

(1) a refusal to permit reasonable modifications necessary to afford the handicapped person full enjoyment of the premises, and (2) "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford [the handicapped person] equal opportunity to use and enjoy a dwelling." *Id.* § 3604(f)(3)(A)–(B). Legge states that he suffers from several serious and permanent impairments that qualify as a "handicap" under the FHA, including stomach and prostate cancer, gastrointestinal complications, and chronic anemia. (Am. Compl. ¶ 163.)

Legge's FHA discrimination claim is not likely to succeed. Even assuming his garage qualifies as a "dwelling"—which the parties dispute—he is not likely to establish that Defendants discriminated against him because of his alleged handicap. As an initial matter, there is no indication that Defendants exhibited any animus towards Legge because of his medical conditions. Nor does the record suggest that Defendants failed to make reasonable accommodations for his alleged handicap. Legge claims that Defendants violated § 3604(f)(2) by continuing to enforce the zoning ordinance despite "knowing that [he] lacked the physical and financial ability to defend himself or dismantle the structure due to his condition." (*See id.* ¶ 166.) But he has not shown that his requests for a variance and other accommodations had any connection to his medical condition. Without that nexus, Legge cannot establish an FHA failure-to-accommodate claim. *See Bryant Woods Inn, Inc. v. Howard Cnty.*, 124 F.3d 597, 604 (4th Cir. 1997) (explaining that the FHA "requires the demonstration of a direct linkage between the proposed accommodation and the 'equal opportunity' to be provided to the handicapped person").

Count II also alleges a retaliation claim under 42 U.S.C. § 3617. (Am. Compl. ¶ 170.) Section 3617 makes it "unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed," rights protected by the FHA. 42 U.S.C. § 3617. To prevail on a § 3617 claim, Legge must establish that (1) he engaged in protected activity; (2) Defendants were aware of that activity; (4) Defendants took adverse action against him; and (4) a causal connection existed between his protected activity and the alleged adverse action. *Hall v. Greystar Mgmt. Servs., L.P.*, 637 F. App'x 93, 98 (4th Cir. 2016) (citing *King v. Rumsfeld*, 328 F.3d 145, 150–51 (4th Cir. 2003)). Protected activity includes any "action taken to protest or oppose statutorily prohibited discrimination" or "the exercise or enjoyment of rights under 42 U.S.C. § 3604 to equal services and conditions of housing." *Matarese v. Archstone Pentagon City*, 795 F. Supp. 2d 402, 442 (E.D. Va. 2011) (citation omitted), *aff'd in part, vacated in part sub nom. Matarese v. Archstone Cmtys., LLC*, 468 F. App'x 283 (4th Cir. 2012).

Legge has not alleged any facts suggesting that he engaged in protected activity under the FHA. He claims only that Defendants interfered with his FHA rights after he "exercised his right to file appeals and participate in zoning hearings." (Am. Compl. ¶ 170.) He does not allege that he exercised or advocated for his FHA rights during any of those proceedings. In fact, the record does not indicate that Legge even informed the County of his medical condition until March 2023, well after the state court had entered judgment against him. (*See Id.* ¶¶ 72, 93.)

For these reasons, the court finds that Legge has not shown a likelihood of success on his claims under the FHA.

3.  Procedural due process (Count IV)

Count IV alleges that Defendants violated Legge's procedural due process rights.  (*Id.*
¶¶ 189–201.)  To establish a procedural due process violation, Legge must show that he had a
protected property interest and that Defendants deprived him of that interest without due
process of law.  *Rockville Cars, LLC v. City of Rockville*, 891 F.3d 141, 146 (4th Cir. 2018).  Legge
asserts that Defendants violated his procedural due process rights by "refusing to acknowledge
approved permits and inspections," "denying [him] the opportunity to reasonably mitigate the
alleged setback issue," and "failing to apply consistent enforcement standards or offer
meaningful hearing procedures."  (Am. Compl. ¶ 194.)

Legge cannot establish a procedural due process violation because he failed to avail
himself of available state remedies.  Even when a party had a protected property interest and
was deprived of that interest, "no § 1983 procedural due process violation exists when [the]
party fails to exhaust both administrative and state court remedies that the government affords
to them."  *Rockville Cars*, 891 F.3d at 149.  That is because "[a]nalyzing the adequacy of process
a state affords usually requires courts to consult the entire panoply of predeprivation and
postdeprivation process provided by the state."  *Id.* (internal quotation marks omitted); *see also*
*Mora v. City of Gaithersburg*, 519 F.3d 216, 230 (4th Cir. 2008) (explaining that a procedural due
process violation "is not complete when the deprivation occurs; it is not complete unless and
until the State fails to provide due process" (quoting *Zinermon v. Burch*, 494 U.S. 113, 125–26
(1990)).

Legge did not exhaust available remedies for either of the two Notices of Violation
issued for the garage.  He received the first Notice of Violation—which asserted that the

garage violated the Certificate of Appropriateness—on April 9, 2020. (Dkt. 3-1 at 10–11.) He did not appeal that Notice of Violation to the BZA, (*see id.* at 5–6; Dkt. 3-2 at 11), and it thus became a final and unappealable decision 30 days later, *see* Va. Code Ann. § 15.2-2311(A). Legge did file a BZA appeal after receiving the August 31, 2020 Notice of Violation, which asserted that the garage violated the setback requirement. (*See* Dkt. 20-1 at 2–6.) Under Va. Code § 15.2-2314, he had the opportunity to appeal the BZA's adverse decision to state circuit court within 30 days, but he failed to do so. (*See* Dkt. 3-1 at 6–7; Dkt. 3-2 at 12.) Nor did he file an appeal of the BZA's April 19, 2021 decision denying his request for a variance. (*See id.*) And when the state circuit court granted the County injunctive relief in its lawsuit against Legge, Legge did not appeal that decision to the state appellate court. Because he repeatedly failed to take advantage of the available process before the BZA or state court, he cannot show a likelihood of success on his procedural due process claim. *See Mendes v. Beahm*, No. 5:19-cv-00072, 2020 WL 3473656, at *4 (W.D. Va. June 25, 2020) (dismissing a procedural due process claim challenging a BZA decision because the plaintiff failed to appeal the decision to a Virginia circuit court).

4. Substantive due process (Count V)

Lastly, Count V alleges a violation of Legge's substantive due process rights. (Am. Compl. ¶¶ 202–09.) To prevail on that claim, Legge must show that (1) he had property or a property interest; (2) the state deprived him of the property or property interest; and (3) "the state's action f[ell] so far beyond the outer limits of legitimate governmental action that *no process* could cure the deficiency." *MLC Auto., LLC v. Town of So. Pines*, 532 F.3d 269, 281 (4th Cir. 2008) (quoting *Sylvia Dev. Corp. v. Calvert Cnty.*, 48 F.3d 810, 827 (4th Cir. 1995)). A zoning

action offends substantive due process only if it is "clear that the state's action 'has no foundation in reason and is a mere arbitrary or irrational exercise of power having no substantial relation to the public health, the public morals, the public safety or the public welfare in its proper sense.'" *Id.* (quoting *Nectow v. City of Cambridge*, 277 U.S. 183, 187–88 (1928)). When considering whether a zoning decision meets that standard, courts may consider multiple factors, including whether "(1) the zoning decision is tainted with fundamental procedural irregularity; (2) the action is targeted at a single party; and (3) the action deviates from or is inconsistent with regular practice." *Id.*

In his reply brief, Legge offers no response to Defendants' arguments challenging his substantive due process claim. (*See* Pl.'s Reply at 4–8.) Based on the current record, the claim is not likely to succeed. For one, there is little question that the County had a rational basis for finding that Legge's garage violated the zoning ordinance. The construction plan Legge attached to his application for a zoning permit indicated that the garage would comply with the setback requirement, but the as-built survey shows that part of the structure encroaches on the setback area. (*See* Am. Compl. ¶¶ 37–39, 45; Dkt. 3-1 at 12.) Legge alleges that County officials had not identified the setback issue when conducting inspections during construction. (Am. Compl. ¶¶ 19, 40–43.) But the County's alleged oversight during those inspections does not mean it acted arbitrarily by issuing the Notice of Violation after the as-built survey confirmed the setback violation.

Nor has Legge identified specific procedural irregularities in the County's zoning enforcement actions, beyond his allegations that County officials targeted him for unusually aggressive enforcement relative to other property owners. Even if he had provided more

factual support for those allegations, the fact that he did not avail himself of all available state procedures and processes for challenging the County's zoning decisions is a likely barrier to his substantive due process claim. *See Sylvia Dev. Corp.*, 48 F.3d at 829 (stating that the availability of state procedures "to address and correct illegal actions by the [defendant] belies the existence of a substantive due process claim"); *Mora*, 519 F.3d at 230–31 (noting that a state's treatment of a plaintiff is "hardly arbitrary when the state has given him the means to correct the errors he alleges"). Legge could have appealed the BZA's decisions related to the August 31, 2020 Notice of Violation to state circuit court, but he chose not to do so. He also chose not to appeal the April 9, 2020 Notice of Violation to the BZA. Under those circumstances, it will be difficult for him to establish that the County's zoning decisions were so arbitrary and irrational that they were "literally incapable of avoidance by any pre-deprivation procedural protections or of adequate rectification by any post-deprivation state remedies." *Rucker v. Harford Cnty.*, 946 F.2d 278, 281 (4th Cir. 1991). The court therefore finds that Legge has not demonstrated a likelihood of success on his substantive due process claim.

## IV.    Conclusion

For the reasons outlined above, Legge has not made a clear showing that he is likely to succeed on the merits of any claim. As Legge has not satisfied the first *Winter* factor, the court need not analyze the three remaining factors. The court will **DENY** Legge's motion for a preliminary injunction (Dkt. 16).

An appropriate Order will issue.

**ENTERED** this 4th day of September, 2025.

HON. JASMINE H. YOON
UNITED STATES DISTRICT JUDGE