CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
June 30, 2026

LAURA A. AUSTIN, CLERK
BY: s/ D. AUDIA
      DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| Brian K. Legge, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 5:25-cv-00062 |
| | ) | |
| Clarke County Zoning Department *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

In 2020, Brian K. Legge violated Clarke County zoning regulations. The County took enforcement measures against him and prevailed in a state-court trial. But Legge failed to comply with the resulting court order, accumulating hefty fines. Now, Legge claims that the County's enforcement actions violated his constitutional rights and discriminated against him under the Fair Housing Act.

This matter is before the court on Defendants' motion to dismiss Legge's amended complaint. (Dkt. 31.) For the following reasons, the court will grant the motion.

## I.    Background

### A. Factual History[1]

In 2019, Plaintiff Brian K. Legge decided to build a garage on his property at 140 White Post Road in Clarke County, Virginia. (Dkt. 3 (Am. Compl.) ¶¶ 29–30.) Because Legge's

---

[1] The facts are taken from Legge's amended complaint, which are assumed true for purposes of a motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court also considers the exhibits that Legge attached to his complaint. *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016); Fed. R. Civ. P. 10(c). When allegations in the complaint and an attached exhibit conflict, the exhibit wins out. *Fayetteville Invs. v. Com. Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991).

property sits within the county's Historic Overlay District, he first had to obtain a Certificate of Appropriateness for the garage from the Historic Preservation Commission ("HPC"), (*see* Dkt. 3-1 at 237), which he received on October 30, 2019, (*id.* at 313–320). Legge also obtained zoning permits from the Clarke County Building Department in November 2019. (Am. Compl. ¶ 31.)

On April 9, 2020, the Clarke County Zoning Administrator, Ryan Fincham, issued a Notice of Violation to Legge, informing him that his garage may violate certain terms of the Certificate of Appropriateness. (Dkt. 3-1 at 7–8.) The notice advised Legge that he had the right to appeal the administrative determination to Clarke County's Board of Zoning Appeals ("BZA"). Legge did not file an appeal. (*See id.* at 2–3.)

The April 9 notice also advised Legge of another potential violation. Because Legge's property is zoned for Clarke County's Rural Residential Zoning District and Historic Overlay District, (Dkt. 3-1 at 2), structures on his property must be set back at least 50 feet from the right-of-way of any primary highway with at least 5,000 vehicle trips per day, (*see id.* at 185). Legge's property adjoins Route 340, which has more than 5,000 daily vehicle trips. (*See id.* at 165; *see also* Am. Compl. ¶¶ 37–38.) The April 9 notice informed Legge that his garage may violate this 50-foot minimum setback requirement. (Dkt. 3-1 at 7–8.) The County informed Legge that it may require an "as-built survey" to evaluate the garage's compliance with the setback requirement. (*Id.*)

An as-built survey was conducted in August 2020. (*Id.* at 9–10.) The survey showed that the garage was located approximately 36 feet from the edge of the right-of-way for Route 340. (*See id.* at 10.) On August 31, 2020, the County issued Legge another Notice of Violation

based on the conclusion that the garage violated the setback requirement set forth by the Clarke County Zoning Ordinance. (*Id.* at 10.)  Legge appealed this determination to the BZA. (*See id.* at 449.)  On January 25, 2021, the BZA upheld the Zoning Administrator's decision after hearing argument from counsel for Legge and the County. (*Id.*)  Legge did not appeal the BZA's decision to state court. (*See id.* at 3–4.)

After the BZA denied his appeal, Legge submitted a request for a variance to allow the garage to remain in its current location. (*See* Dkt. 3-1 at 446–61.)  The BZA denied the request for a variance after a hearing on April 19, 2021. (*Id.* at 11).  Legge did not appeal that decision to state court. (*See id.* at 3–4.)

On May 28, 2021, the County granted Legge a 30-day extension to resolve the setback violation. (*Id.* at 11–12.)  When Legge did not correct the issue within that period, the County filed a complaint against Legge in the Circuit Court for Clarke County on August 5, 2021. (*Id.* at 1–2, 4.)  The County requested a mandatory injunction requiring Legge to remove the garage or take steps to bring it into compliance with the setback requirement. (*Id.* at 4–5.)  Legge filed a demurrer, plea in bar, answer, and counterclaim. (Dkt. 3-2 at 1–15.)  Legge's counterclaim sought a declaratory judgment holding that his right to use his garage had vested under Virginia statute, even if it violated the County's zoning ordinance. (*Id.* at 15.)

The state circuit court held a trial on April 20, 2022. (*See* Dkt. 3-1 at 548; Dkt. 3-2 at 102.)  At trial, the court found in favor of the County and denied Legge's counterclaim. (Dkt. 3-1 at 548–50.)  The court entered a final judgment on June 1, 2022, ordering Legge to "get into compliance with the Zoning Ordinance setback requirement and any other provisions of

the Zoning Ordinance by January 13, 2023." (*Id.*)  Legge does not allege that he appealed that judgment.

Legge did not address the setback issue by the January 13, 2023 deadline.  (*Id.* at 567–70.)  On February 23, 2023, the County moved the state court to order Legge to show cause why he should not be held in contempt and fined for failing to comply with the June 1, 2022 order.  (*Id.* at 558–60.)  The court issued a show cause order.  (*Id.* at 567–68.)  Legge responded to the show cause order on March 30, 2023.  (*Id.* at 569–570.)  In it, Legge stated that he had been diagnosed with stomach and prostate cancer and that he had recently separated from his wife, which impacted his ability to comply with the court's June 1, 2022 order.  (*Id.* at 569.)

At some point in March 2023, Legge sent Clarke County a letter "requesting a temporary stay or accommodation in light of his health, separation from his wife, and escalating medical conditions and associated costs." (*See* Am. Compl. ¶ 93.)  Throughout 2022 and 2023, Legge also seemingly requested reconsideration of the variance denial without success.  (*Id.* ¶¶ 77, 82, 86, 96, 118.)

On April 17, 2023, the state court entered an agreed order finding Legge in contempt of the court's June 1, 2022 order.  (Dkt. 3-1 at 571–74.)  The court ordered Legge to pay the County a $500 per-day fine if he did not bring the garage into compliance with the zoning ordinance by designated deadlines.  (*Id.*)  Legge did not meet those deadlines.  (*See id.* at 579).  Following status hearings in November 2023 and January 2024, the state court entered an order on February 5, 2024, that required Legge to pay a $500 daily fine beginning on January 18, 2024, and continuing until he submitted a demolition plan.  (*Id.* at 577, 579–83.)

On June 12, 2024, the County filed a second motion to require Legge to show cause, asserting that Legge had failed to pay the fines in violation of the court's February 5, 2024 order.  (*Id.* at 584–88.)  The court issued another order to show cause on June 17, 2024.  (*Id.* at 589–90.)  On July 29, 2024, the court entered an order holding Legge in contempt.  (*Id.* at 597–601.)  It entered judgment for the County against Legge for $91,000 in unpaid fines from January 18, 2024, through July 17, 2024.  (*Id.*)

Legge did not pay that judgment or take any steps to bring the garage into compliance with the zoning ordinance.  The court entered another order to show cause on April 2, 2025. (*Id.* at 600.)  Legge was served but failed to appear at that hearing.  (*Id.*)  The court once again held Legge in contempt and ordered him to pay an additional $146,500 in unpaid fines from July 18, 2024, through May 7, 2025. (*Id.* at 600–03.)  The court also ordered Legge to demolish the offending portion of the garage by June 20, 2025, and authorized the County to follow prescribed steps for demolishing the structure if Legge failed to do so.  (*Id.* at 602–03.)

### B.  Procedural History

On June 18, 2025, Legge filed a complaint for declaratory and injunctive relief in the United States District Court for the Western District of Virginia.  (Compl. (Dkt. 1).)  He filed an amended complaint on July 9, 2025.  (Am. Compl. (Dkt. 3).)  The amended complaint names as defendants the Clarke County Zoning Department, the Clarke County Board of Supervisors, the Historical District of White Post, Virginia, and several County officials sued in their official capacities.  (*Id.* ¶¶ 7–15.)  It alleges five causes of action.  Count I alleges a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment.  (*Id.* ¶¶ 137–53.)  Count II alleges a violation of the Fair Housing Act, 42 U.S.C.

§§ 3601 *et seq.* (*Id.* ¶¶ 154–75.) Count III alleges violations of the Eighth Amendment's Excessive Fines Clause and a Virginia statute governing fines for zoning violations. (*Id.* ¶¶ 176–88.) Counts IV and V allege § 1983 claims for violations of procedural and substantive due process, respectively. (*Id.* ¶¶ 189–209.) Legge seeks declaratory and injunctive relief, $1,450,000 in compensatory damages, and $1,125,000 in punitive damages.[2] (*Id.* at 33–34.)

Legge filed a motion for a preliminary injunction on July 30, 2025. (Mot. for Prelim. Inj. (Dkt. 16).) The court heard argument on the motion on August 13, 2025, (Dkt. 26), and denied the motion on September 4, 2025. (Dkt. 30.) Defendants filed the present motion to dismiss shortly thereafter. (Dkt. 31.)

## II.    Standard of Review

Motions to dismiss under Rule 12(b)(6) test the legal sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). They do not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 616 (4th Cir. 2020) (quoting *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016)). To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In reviewing a motion to dismiss for failure to state a claim, "a court must consider the factual

---

[2] Count VI of the amended complaint requests permanent injunctive relief against demolition but does not allege a separate cause of action. (*Id.* ¶¶ 210–20.)

allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff."

*Bing*, 959 F.3d at 616.

### III.    Analysis

**A.  The *Rooker-Feldman* Doctrine Does Not Prevent This Court from Exercising Subject Matter Jurisdiction.**

Defendants argue that the *Rooker-Feldman* doctrine prevents the court from exercising subject matter jurisdiction over Legge's claims.  (Defs.' Br. at 23–26.)  The court disagrees.

The *Rooker-Feldman* doctrine prohibits federal district courts from hearing "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."  *T.M. v. Univ. of Md. Med. Sys. Corp.*, 139 F.4th 344, 349 (4th Cir. 2025) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)).  Such claims are barred because they ask a federal district court "to conduct an appellate review of the state-court decision."  *Adkins v. Rumsfeld*, 464 F.3d 456, 464 (4th Cir. 2006) (quoting *Davani v. Va. Dep't of Transp.*, 434 F.3d 712, 719 (4th Cir. 2006)).

The *Rooker-Feldman* doctrine "extends not only to issues actually decided by a state court but also to those that are inextricably intertwined with questions ruled upon by a state court."  *Safety-Kleen, Inc. (Pinewood) v. Wyche*, 274 F.3d 846, 857–58 (4th Cir. 2001) (internal quotation marks omitted).  "A federal claim is 'inextricably intertwined' with a state court decision if success on the federal claim depends upon a determination that the state court wrongly decided the issues before it."  *Id.* at 858 (internal quotation marks omitted).  At the same time, *Rooker-Feldman* is not a general preclusion doctrine and does not "stop a district

- 7 -

court from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court." *Exxon*, 544 U.S. at 282.

The *Rooker-Feldman* doctrine does not deprive this court of jurisdiction over Legge's equal protection, FHA, or due process claims. Legge does not seek to overturn any state court judgment via these claims. Nor, as Defendants argue, are they "inextricably intertwined with questions ruled upon" by the Circuit Court for Clarke County. In that state-court action, Legge did not raise equal protection, FHA, or due process claims. Success on these claims thus does not "depend[] upon a determination that the state court wrongly decided the issues before it." *Safety-Kleen*, 274 F.3d at 858.

But—as the court previously ruled—the *Rooker-Feldman* doctrine does bar Count III, in which Legge claims he was subject to excessive fines in violation of the Eighth Amendment and Virginia law. (Dkt. 29 at 8–9.) The exhibits attached to Legge's complaint make clear that the fines that Legge challenges were incorporated into a state judgment. (*See, e.g.*, Dkt. 3-1 at 597–98.) Legge acknowledges as much in his briefing.[3] (Pl.'s Resp. at 1.) Thus, Count III seeks review of an injury caused by a state-court judgment and asks this court to reject that judgment. *See Exxon*, 544 U.S. at 284. This runs directly afoul of the *Rooker-Feldman* doctrine. Accordingly, the court will dismiss Count III without prejudice.[4]

---

[3] The court may properly consider this judicial admission at the motion to dismiss stage. *VIA Design Architects, PC v. U.S. Dev. Co., LLC*, No. 2:13-cv-555, 2014 WL 5685550, at *7 (E.D. Va. Nov. 4, 2014) (citing *Meyer v. Berkshire Life Ins. Co.*, 372 F.3d 261, 264–65 (4th Cir. 2004)) (noting that district courts in the Fourth Circuit have discretion to consider statements in briefing to be judicial admissions).

[4] Claims dismissed for lack of subject matter jurisdiction must be dismissed without prejudice. *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 185 (4th Cir. 2013) (noting that dismissals for lack of subject matter jurisdiction "must be one without prejudice, because a court that lacks jurisdiction has no power to adjudicate and dispose of a claim on the merits.").

**B.  The court will not determine whether Legge's claims are barred by the statute of limitations at the Rule 12(b)(6) stage.**

Next, Defendants argue that counts I, II, IV and V are time-barred and must be dismissed.  The statute of limitations is an affirmative defense on which the defendant bears the burden of proof.  Ordinarily, courts do not reach affirmative defenses on Rule 12(b)(6) motions to dismiss.  *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993) ("A motion under Rule 12(b)(6) is intended to test the legal adequacy of the complaint, and not to address the merits of any affirmative defenses.").  Dismissal on statute of limitations grounds occurs only in the "relatively rare circumstances" where "all facts necessary" to the statute of limitations defense "clearly appear on the face of the complaint." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (cleaned up); *see also Hamilton v. D.C.*, 852 F. Supp. 2d 139, 146 (D.D.C. 2012) ("Because assessments of the statute of limitations often depend on contested questions of fact," a court should dismiss a complaint "on statute of limitations grounds only if it is conclusively time-barred and no reasonable person could disagree on the date on which the cause of action accrued." (cleaned up).)

Here, the statute of limitations started counting down when Legge's claim "accrued." Under federal common law, "[a] civil rights claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." *A Soc'y Without A Name v. Virginia*, 655 F.3d 342, 348 (4th Cir. 2011) (cleaned up).  The limitation period for Legge's claims is two years.[5]  (Defs.' Br. at 9; Pl.'s Resp. at 9.)  So if Legge knew or should have known

---

[5] Legge's § 1983 claim borrows from Virginia's two-year statute of limitations for personal injury actions, *Anselme v. Fluvanna Corr. Ctr. for Women*, No. 3:20-cv-00005, 2020 WL 7407467, at *2 (W.D. Va. Dec. 17, 2020), while claims under the FHA have their own two-year statute of limitations, *see* 42 U.S.C. § 3613(a)(1)(A).

of his injuries before June 18, 2023—which is two years before he initiated this suit (*see* Dkt. 1)—his claims are barred by the statute of limitations.

The court declines to dismiss Legge's complaint on limitations grounds.  This case does not present the "relatively rare circumstances" where such a dismissal is appropriate, *Goodman*, 494 F.3d at 464, as Legge's complaint does not make absolutely clear that his claims accrued before June 18, 2023.  For example, it could be that Defendants committed a continuing violation of Legge's rights, such that the limitations period for Legge's claim restarted in 2023 or 2024.  *A Soc'y Without A Name*, 655 F.3d at 348 ("[I]f the plaintiff can show that the illegal act did not occur just once, but rather 'in a series of separate acts[,] and if the same alleged violation was committed at the time of each act, then the limitations period begins anew with each violation.'").  To be sure, Legge's pleadings currently do not support such a finding (and his briefing on the subject was wanting).  But a claim should not be dismissed on limitations grounds so "long as there is a conceivable set of facts, consistent with the complaint, that would defeat a statute-of-limitations defense."  *Reilly v. Will Cnty. Sheriff's Off.*, 142 F.4th 924, 930 (7th Cir. 2025) (cleaned up).  That is the case here.

Accordingly, Defendants' limitations defense is "more properly reserved for consideration on a motion for summary judgment."  *Forst*, 4 F.3d at 250.

## C. Legge Fails to State a Claim on the Merits

In Legge's remaining claims, he alleges that Defendants' zoning enforcement actions violated the Equal Protection Clause (Count I), the Fair Housing Act (Count II), and both his

procedural and substantive due process rights (Counts IV and V).  Legge fails to state a claim on each count.[6]

    1.  Equal protection (Count I)

Count I of the amended complaint alleges that Defendants selectively enforced the County's zoning ordinances against Legge in violation of the Equal Protection Clause.  (Am. Compl. ¶¶ 138–40.)  Legge's equal protection claim relies on a "class-of-one" theory.  (*Id.* ¶ 141.)  A plaintiff who brings a class-of-one claim must show that he was "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam).

To allege a class-of-one claim in the context of a discretionary zoning decision, the plaintiff must allege "an extremely high degree of similarity between themselves and the persons to whom they compare themselves."  *SAS Assocs. 1, LLC v. City Council*, 91 F.4th 715, 722 (4th Cir. 2024) (citation omitted).  Such allegations are necessary for a court to "infer that the decisionmaker's differential treatment was intentional and arbitrary."  *Id.*  The Fourth Circuit has stressed that "zoning decisions are presumptively the province of local governments" and "lie at the core of local governments' historic responsibilities."  *Id.* at 720.

The amended complaint points to seventeen comparator properties in the White Post Historic District bordering Route 340 with structures on them.  (Am. Compl. ¶ 63.)  It alleges

---

[6] Because the court finds that Legge fails to state a claim under Rule 12(b)(6), the court declines to reach Defendants' arguments on the grounds of qualified immunity, Rule 12(b)(5) insufficient process, *res judicata*, § 1983 individual liability, and the argument that certain defendants are not "persons" under § 1983.  *Stanley v. Bocock*, 160 F.4th 573, 579 n.6 (4th Cir. 2025) (declining to reach the defendant's qualified immunity argument upon dismissing under Rule 12(b)(6)); *Torres v. B&L Mach. & Fabrication, Inc.*, No. 2:23-cv-00318, 2025 WL 802993, at *5 (E.D. Va. Feb. 12, 2025), *aff'd*, No. 25-1236, 2025 WL 1513623 (4th Cir. May 28, 2025) (same for defendants' Rule 12(b)(5) argument); *Elyazidi v. SunTrust Bank*, No. CIV. A. DKC 13-2204, 2014 WL 824129, at *7 n.3 (D. Md. Feb. 28, 2014), *aff'd*, 780 F.3d 227 (4th Cir. 2015) (same for defendant's *res judicata* argument).

that it "appears that more than half of those properties enjoy structures situated within the required setback area of Route 340." (*Id.*) It also lists nine properties with addresses on Route 340 or White Post Road that "appear to maintain structures that would generally not meet the [setback] requirement," (*id.* ¶ 62,) but against which the County has not taken enforcement action, (*id.* ¶ 65).

But Legge has not alleged "an extremely high degree of similarity" between his property and these comparator properties. *SAS*, 91 F.4th at 722. Even if the other structures shared the same zoning classifications and violated the setback requirement, Legge does not allege when they were built. These structures may predate the zoning ordinance at issue here. Indeed, in the variance request he submitted to the BZA (and that he attached to his complaint), Legge acknowledged that "[s]ome, if not most" of the other allegedly nonconforming structures may predate the setback requirement and therefore be "'grandfathered' in." (Dkt. 3-1 at 266.) Legge has alleged no facts showing that the County permitted another property owner to construct a noncompliant structure when the ordinance was in effect. Accordingly, Legge has not alleged that Defendants treated him differently than a "highly similar" property owner. *SAS*, 91 F.4th at 723.

Additionally, the April 9, 2020 Notice of Violation found that the garage's design also apparently violated several conditions of the Certificate of Appropriateness issued by the HPC. (Dkt. 3-1 at 7–8.) Legge has not alleged that the structures on the other properties in the Historic Overlay District similarly failed to comply with Certificates of Appropriateness as Count I focuses exclusively on the setback violation. (*See* Am. Compl. ¶¶ 137–53.) This further shows that Legge failed to allege that these comparators were "highly similar" to him.

For these reasons, the court finds Legge fails to state a claim on his class-of-one equal protection claim.

2. Fair Housing Act (Count II)

Legge states that he suffers from several serious and permanent impairments that qualify as a "handicap" under the FHA, including stomach and prostate cancer, gastrointestinal complications, and chronic anemia. (Am. Compl. ¶ 163.) Count II alleges that Defendants violated the FHA by (1) discriminating against him based on his disability, (2) failing to accommodate Legge's disability, and (3) retaliating against him for opposing the County's zoning enforcement decisions. (Am. Compl. ¶¶ 154–75.)

i.    *Legge fails to state an FHA discrimination claim.*

42 U.S.C. § 3604(f)(2) makes it unlawful "[t]o discriminate against any person . . . in the provision of services or facilities in connection with [a] dwelling, because of [the person's] handicap."[7]  "A plaintiff alleging discrimination" under this statute "may proceed under a theory of disparate impact or disparate treatment." *Bailey v. Queen's Landing Council of Unit Owners, Inc.*, No. ABA-23-cv-1559, 2024 WL 3344625, at \*3 (D. Md. July 9, 2024).  Legge fails to state a claim for FHA discrimination under either theory.

First, Legge fails to state a disparate *impact* claim.  "[A] plaintiff bringing a disparate-impact claim challenges practices that have a disproportionately adverse effect on [a protected group] and are otherwise unjustified by a legitimate rationale." *Reyes v. Waples Mobile Home Park Ltd. P'ship*, 903 F.3d 415, 421 (4th Cir. 2018) (cleaned up).  To plausibly allege an FHA

---

[7] The court assumes without deciding that Legge's garage qualifies as a "dwelling" under the FHA, which the parties dispute.  (Defs.' Br. at 33; Pl.'s Resp. at 14.)

disparate impact claim, a plaintiff must allege a "robust causal connection between the defendant's challenged policy and the disparate impact on the protected class." *Id.* But Legge alleges that he is the only person affected by Defendants' enforcement decisions. "[W]here only one group or class of persons is affected by a particular decision, there is no disparity in treatment between groups and no 'disparate impact.'" *Doran v. Prince William Cnty.*, No. 1:09-cv-00195, 2009 WL 10687839, at *4 (E.D. Va. Apr. 24, 2009). Because Legge fails to allege existence of others who are also affected, Legge's disparate impact claim fails.

Legge likewise fails to state a disparate *treatment* claim. Legge alleges that Defendants discriminated against him by denying his variance request, failing to provide guidance on how to bring the garage into compliance, and continuing to enforce the zoning ordinance despite "knowing that [he] lacked the physical and financial ability to defend himself or dismantle the structure due to his condition." (*See id.* ¶¶ 165–66.) But no allegation suggests that Defendants exhibited any animus towards Legge because of his medical conditions. At most, he alleges that Defendants took action against him while being aware of his illnesses. But this is insufficient to state a claim for discrimination. *See Jones v. Marsh*, No. 3:20-cv-00614, 2021 WL 3130876, at *3 (W.D.N.C. July 23, 2021) (alleging only membership in a protected class without allegations of "discriminatory actions" taken "on account of the purported class" does not give rise to an FHA claim). Legge alleges nothing that could give rise to a reasonable inference that Defendants discriminated against him based on his protected status.

### ii. *Legge fails to state an FHA failure-to-accommodate claim.*

Legge alleges that Defendants knew of Legge's disabilities but "failed to make reasonable accommodations or adjustments to enforcement processes." (Am. Compl. ¶ 164.)

- 14 -

In other words, Legge seemingly makes a failure-to-accommodate claim under the FHA. Such a claim must allege that a defendant denied an accommodation that "is (1) reasonable and (2) necessary (3) to afford handicapped persons equal opportunity to use and enjoy housing." *Bryant Woods Inn, Inc. v. Howard Cnty.*, 124 F.3d 597, 603 (4th Cir. 1997). There is no requirement to prove discriminatory intent in FHA failure-to-accommodate claims. *Mayrant v. Norfolk Redevelopment & Hous. Auth.*, 801 F. Supp. 3d 601, 619 (E.D. Va. 2025).

Legge's failure-to-accommodate claim likewise fails. "The 'necessary' element" of an FHA failure-to-accommodate claim "requires the demonstration of a direct linkage between the proposed accommodation and the 'equal opportunity' to be provided to the handicapped person." *Bryant Woods Inn, Inc.*, 124 F.3d at 604. "[I]f the proposed accommodation provides no direct amelioration of a disability's effect, it cannot be said to be 'necessary.'" *Id.* But Legge only alleges he requested vague "accommodations," without describing what they are or how they could be helpful. The court cannot ascertain whether his requested accommodation would ameliorate the effects of his disability such that they were "necessary" to provide him "equal opportunity" under the FHA. This is a prerequisite to stating a failure-to-accommodate claim and Legge has not satisfied it.

### iii.    *Legge fails to state an FHA retaliation claim.*

Count II also alleges a retaliation claim under 42 U.S.C. § 3617. (Am. Compl. ¶ 170.) Section 3617 makes it "unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed" rights protected by the FHA. 42 U.S.C. § 3617. To prevail on a § 3617 claim, Legge must allege that (1) he engaged in protected activity; (2) Defendants were aware of that activity; (3) Defendants

took adverse action against him; and (4) a causal connection existed between his protected activity and the alleged adverse action. *Hall v. Greystar Mgmt. Servs., L.P.*, 637 F. App'x 93, 98 (4th Cir. 2016) (citing *King v. Rumsfeld*, 328 F.3d 145, 150–51 (4th Cir. 2003)). Protected activity includes any "action taken to protest or oppose statutorily prohibited discrimination" or "the exercise or enjoyment of rights under 42 U.S.C. § 3604 to equal services and conditions of housing." *Matarese v. Archstone Pentagon City*, 795 F. Supp. 2d 402, 442 (E.D. Va. 2011) (citation omitted), *aff'd in part, vacated in part sub nom. Matarese v. Archstone Cmtys., LLC*, 468 F. App'x 283 (4th Cir. 2012).

But Legge has not alleged any facts suggesting that he engaged in protected activity under the FHA. He claims only that Defendants interfered with his FHA rights after he "exercised his right to file appeals and participate in zoning hearings." (Am. Compl. ¶ 170.) He does not allege that he exercised or advocated for his FHA rights during any of those proceedings. Moreover, Legge has alleged no "causal connection" between his disability and any alleged adverse action for the reasons already discussed (including the lack of similarly situated comparator or allegations of any animus by County officials). Legge fails to state an FHA retaliation claim.

    3.  <u>Procedural due process (Count IV)</u>

Count IV alleges that Defendants violated Legge's procedural due process rights. (*Id.* ¶¶ 189–201.) To establish a procedural due process violation, Legge must show that he had a protected property interest and that Defendants deprived him of that interest without due process of law. *Rockville Cars, LLC v. City of Rockville*, 891 F.3d 141, 146 (4th Cir. 2018). Legge alleges that Defendants violated his procedural due process rights by "refusing to acknowledge

approved permits and inspections," "denying [him] the opportunity to reasonably mitigate the alleged setback issue," and "failing to apply consistent enforcement standards or offer meaningful hearing procedures." (Am. Compl. ¶ 194.)

Legge cannot establish a procedural due process violation because—as the exhibits attached to his complaint show[8]—he failed to avail himself of available state remedies. Even when a party had a protected property interest and was deprived of that interest, "no § 1983 procedural due process violation exists when [the] party fails to exhaust both administrative and state court remedies that the government affords to them." *Rockville Cars*, 891 F.3d at 149. That is because "[a]nalyzing the adequacy of process a state affords usually requires courts to consult the entire panoply of predeprivation and postdeprivation process provided by the state." *Id.* (internal quotation marks omitted); *see also Mora v. City of Gaithersburg*, 519 F.3d 216, 230 (4th Cir. 2008) (explaining that a procedural due process violation "is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process" (quoting *Zinermon v. Burch*, 494 U.S. 113, 125–26 (1990))).

According to the exhibits attached to his complaint, Legge did not exhaust available remedies for either Notice of Violation issued for the garage. He received the first Notice of Violation—which asserted that the garage violated the Certificate of Appropriateness—on April 9, 2020. (Dkt. 3-1 at 10–11.) He did not appeal that Notice of Violation to the BZA, (*see id.* at 5–6; Dkt. 3-2 at 11), and it thus became a final and unappealable decision 30 days later, *see* Va. Code Ann. § 15.2-2311(A). Legge did file a BZA appeal after receiving the August

---

[8] At the motion to dismiss stage, a court may consider "documents that are explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits." *Goines*, 822 F.3d at 166 (cleaned up).

31, 2020 Notice of Violation, which stated that the garage violated the setback requirement. (*See* Dkt. 3-1 at 399.)  Under Va. Code § 15.2-2314, he had the opportunity to appeal the BZA's adverse decision to state circuit court within 30 days, but he failed to do so.  (*See* Dkt. 3-1 at 3–4.)  Nor did he appeal the BZA's April 19, 2021 decision denying his request for a variance.  (*See id.*)  And when the state circuit court granted the County injunctive relief in its lawsuit against Legge, Legge again did not appeal that decision to the state appellate court. Legge repeatedly failed to take advantage of the available process before the BZA or state court.  "Having failed to avail himself of the procedural safeguards" available to him, Legge "may not complain that he was denied procedural due process."  *Trent v. N. Carolina*, No. 1:13-cv-00275, 2014 WL 2773579, at *8 n.4 (W.D.N.C. June 19, 2014); *see also Mendes v. Beahm*, No. 5:19-cv-00072, 2020 WL 3473656, at *4 (W.D. Va. June 25, 2020) (dismissing a procedural due process claim challenging a BZA decision after the plaintiff failed to appeal to a Virginia circuit court).

    4.   Substantive due process (Count V)

Lastly, Count V alleges a violation of Legge's substantive due process rights.  (Am. Compl. ¶¶ 202–09.)  To prevail on that claim, Legge must show that (1) he had property or a property interest; (2) the state deprived him of the property or property interest; and (3) "the state's action f[ell] so far beyond the outer limits of legitimate governmental action that *no process* could cure the deficiency."  *MLC Auto., LLC v. Town of S. Pines*, 532 F.3d 269, 281 (4th Cir. 2008) (quoting *Sylvia Dev. Corp. v. Calvert Cnty.*, 48 F.3d 810, 827 (4th Cir. 1995)).  A zoning action offends substantive due process only if it is "clear that the state's action 'has no foundation in reason and is a mere arbitrary or irrational exercise of power having no

substantial relation to the public health, the public morals, the public safety or the public welfare in its proper sense.'" *Id.* (quoting *Nectow v. City of Cambridge*, 277 U.S. 183, 187–88 (1928)).  When considering whether a zoning decision meets that standard, courts may consider multiple factors, including whether "(1) the zoning decision is tainted with fundamental procedural irregularity; (2) the action is targeted at a single party; and (3) the action deviates from or is inconsistent with regular practice." *Id.*

Even taking Legge's allegations as true and drawing all reasonable inferences in Legge's favor, the County had a rational basis for finding that Legge's garage violated the zoning ordinance.  The exhibits attached to Legge's complaint show that his garage encroaches on the setback area.  (*See* Am. Compl. ¶¶ 37–39, 45; Dkt. 3-1 at 188.)  While Legge alleges that County officials had not identified the setback issue when conducting inspections during construction, (Am. Compl. ¶¶ 19, 40–43), this does not mean the County acted arbitrarily by enforcing its zoning regulations after confirming the existence of the setback violation.

Nor has Legge alleged specific procedural irregularities in the County's zoning enforcement actions.  Even if he had, the documents attached to his complaint show that he did not avail himself of all available state procedures for challenging the County's zoning decisions.  This forecloses his substantive due process claim.  *See Sylvia Dev. Corp.*, 48 F.3d at 829 (stating that the availability of state procedures "to address and correct illegal actions by the [defendant] belies the existence of a substantive due process claim"); *Mora*, 519 F.3d at 231 (noting that a state's treatment of a plaintiff is "hardly arbitrary when the state has given him the means to correct the errors he alleges").  Legge could have appealed the BZA's decisions related to the August 31, 2020 Notice of Violation to state circuit court, but he did not.  He

also did not appeal the April 9, 2020 Notice of Violation to the BZA. Under those circumstances, he did not allege that the County's zoning decisions were so arbitrary and irrational that they were "literally incapable of avoidance by any pre-deprivation procedural protections or of adequate rectification by any post-deprivation state remedies." *Rucker v. Harford Cnty.*, 946 F.2d 278, 281 (4th Cir. 1991).

## IV.    Conclusion

For these reasons, the court will **GRANT** Defendants' motion to dismiss. Legge's amended complaint will be **DISMISSED without prejudice**. The court will **GRANT** Legge leave to file a second amended complaint within 21 days of the court's forthcoming Order. If Legge fails to file a second amended complaint in that period, the court will dismiss this action with prejudice.

An appropriate Order will issue.

**ENTERED** this 30th day of June, 2026.

HON. JASMINE H. YOON
UNITED STATES DISTRICT JUDGE